**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

AMANDA BROOKS,

       Plaintiff,                              **COMPLAINT**

       -against-                           Case No. _____

BRIGHT HORIZONS FAMILY SOLUTIONS, INC.;       Jury Trial Demanded
BRIGHT HORIZONS FAMILY SOLUTIONS LLC;
BRIGHT HORIZONS CAPITAL CORP.;
BRIGHT HORIZONS CHILDREN'S CENTERS LLC;
BRIGHT HORIZONS CHILDREN'S CENTERS, INC.;
and BRIGHT HORIZONS LLC,

       Defendants.
------------------------------------------------------------------x

       Plaintiff Amanda Brooks, by and through counsel, for her Complaint against Defendants

Bright Horizons Family Solutions, Inc.; Bright Horizons Family Solutions LLC; Bright Horizons

Capital Corp.; Bright Horizons Children's Centers LLC; Bright Horizons Children's Centers,

Inc.; Bright Horizons LLC; and all associated subsidiaries and affiliates; alleges as follows, on

personal knowledge as to her own acts and observations and on information and belief as to all

other matters.

**PARTIES**

       1.      Ms. Brooks is a resident of New York and currently resides in New York, New

York. She is a citizen of New York.

       2.      Upon information and belief, Bright Horizons Family Solutions, Inc. ("Bright

Horizons") is a Delaware domestic corporation with its principal place of business located at 200

Talcott Avenue South, Watertown, Massachusetts, 02572. It is a citizen of Delaware and

Massachusetts.

1

3.      Bright Horizons is a business that provides day care services and early childhood education.

4.      At all times relevant herein, Bright Horizons is and was an employer engaged in industry affecting commerce within the ambit of Section 1981 and an employer within the meaning of the NYSHRL, N.Y. Exec. L. § 296(5), and the NYCHRL, N.Y.C. Admin. Code § 8-102.

5.      Upon information and belief, Bright Horizons Family Solutions LLC is a Delaware domestic company.  Its citizenship is unknown.

6.      Bright Horizons Family Solutions LLC is a business that provides day care services and early childhood education.

7.      At all times relevant herein, Bright Horizons Family Solutions LLC is and was an employer engaged in industry affecting commerce within the ambit of Section 1981 and an employer within the meaning of the NYSHRL, N.Y. Exec. L. § 296(5), and the NYCHRL, N.Y.C. Admin. Code § 8-102.

8.      Upon information and belief, Bright Horizons Capital Corp is a Delaware domestic corporation with its principal place of business located in Massachusetts at 2 Wells Ave, Newton, MA 02459. Bright Horizons Capital Corp is incorporated and conducts business in New York.  It is a citizen of Delaware and Massachusetts.

9.      Bright Horizons Capital Corp. is a business that provides day care services and early childhood education.

10.     At all times relevant herein, Bright Horizons Capital Corp is and was an employer engaged in industry affecting commerce within the ambit of Section 1981 and an employer

within the meaning of the NYSHRL, N.Y. Exec. L. § 296(5), and the NYCHRL, N.Y.C. Admin. Code § 8-102.

11.     Upon information and belief, Bright Horizons Children's Centers LLC is a Delaware domestic company with its principal place of business located Massachusetts at 2 Wells Ave, Newton, MA 02459. Its citizenship is unknown.

12.     Bright Horizons Children's Centers LLC is a business that provides day care services and early childhood education.

13.     At all times relevant herein, Bright Horizons Children's Centers LLC is and was an employer engaged in industry affecting commerce within the ambit of Section 1981 and an employer within the meaning of the NYSHRL, N.Y. Exec. L. § 296(5), and the NYCHRL, N.Y.C. Admin. Code § 8-102.

14.     Upon information and belief, Bright Horizons Children's Centers, Inc. is a Delaware domestic corporation with its principal place of business located Massachusetts at 200 Talcott Avenue South, Watertown, MA 02472. It is a citizen of Delaware and Massachusetts.

15.     Bright Horizons Children's Centers, Inc. is a business that provides day care services and early childhood education.

16.     At all times relevant herein, Bright Horizons Children's Centers, Inc. is and was an employer engaged in industry affecting commerce within the ambit of Section 1981 and an employer within the meaning of the NYSHRL, N.Y. Exec. L. § 296(5), and the NYCHRL, N.Y.C. Admin. Code § 8-102.

17.     Upon information and belief, Bright Horizons LLC is a Delaware domestic company with its principal place of business located Massachusetts at 200 Talcott Avenue South, MA 02472. Bright Horizons LLC conducts business in New York.

18.     Bright Horizons LLC is a business that provides day care services and early childhood education.

19.     At all times relevant herein, Bright Horizons LLC is and was an employer engaged in industry affecting commerce within the ambit of Section 1981 and an employer within the meaning of the NYSHRL, N.Y. Exec. L. § 296(5), and the NYCHRL, N.Y.C. Admin. Code § 8-102.

20.     The Defendants named here (Bright Horizons Family Solutions, Inc.; Bright Horizons Family Solutions, LLC; Bright Horizons Capital Corp.; Bright Horizons Children's Centers LLC; Bright Horizons Children's Centers, Inc.; and Bright Horizons LLC) acted in concert with one another and constitute part of the same overall enterprise, such that the acts of each are the acts of all. This Complaint collectively refers to all Defendants as "Bright Horizons."  A reference to "Bright Horizons" should be deemed a reference to all Defendants, unless specifically stated otherwise.

## JURISDICTION AND VENUE

21.     This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332 and 1343.  There is complete diversity of citizenship between the Plaintiff (who is a New York citizen) and Defendants (which are not New York citizens), and the amount in controversy, excluding interests in costs, exceeds $75,000.  In addition, this action raises claims under a federal civil rights statute, 42 U.S.C. § 1981, and the city and state law claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.  See 28 U.S.C. § 1367.

22.    This Court has personal jurisdiction over the Defendants as the acts and events giving rise to this case occurred in New York, New York.

23.    Venue is proper in the Southern District of New York as the acts and events giving rise to this case occurred in the Southern District of New York.

## STATEMENT OF FACTS

### I.    Background

24.    Amanda Brooks has more than 15 years of teaching experience.

25.    After graduating from Boston College in 2007 with a bachelor's degree in English and a minor in General Education, Ms. Brooks started working as an assistant teacher at Montclare Children's School in New York City.

26.    While working as an assistant teacher, Ms. Brooks fell in love with teaching kids and developed her passion for early education teaching. She returned to school in 2010 and graduated from Hunter College with a Masters in Education, specializing in Early Childhood Education and Teaching in 2013.

27.    After receiving her master's degree, Ms. Brooks taught at Everyday Philanthropy, Montclare Children's School, and Sunshine Learning Center, before joining Bright Horizons as a Director at its West 96th Street location in Manhattan ("West 96th") in July 2017.

28.    Ms. Brooks is a Black Woman.

### II.    Start of Employment

29.    From 2017 through 2020, Ms. Brooks had a stellar work history at Bright Horizons. The teachers, staff, students, and families at West 96th all loved her.

30.     Ms. Brooks had a particularly great relationship with Lee Mirrer, her former Regional Manager, who was impressed by Ms. Brooks's work ethic and mentored her.

31.     Bright Horizons consistently gave Ms. Brooks positive feedback and performance reviews. Ms. Brooks implemented creative solutions to foster better working conditions for Bright Horizons's teachers and to improve service for its students.

32.     For example, in July 2019, Bright Horizons awarded Ms. Brooks the "Rising Star Award" for her development and implementation of an interactive exercise that helped parents learn about the teachers' curriculums.

33.     In another example, Ms. Brooks devised a flexible scheduling model that prevented unnecessary overtime staffing at West 96th and ensured teachers received full-time hours. This model saved Bright Horizons revenue while also alleviating unnecessary burdens from its teachers. The teachers especially supported flexible scheduling, since it ensured they did not lose full-time benefits when they needed to take a day off.

34.     Because of Ms. Brooks's hard work, dedication, and ingenuity, Anne-Marie Salmon (the Division 5 Vice President at Bright Horizons) promised to make Ms. Brooks the director of Columbus Circle—one of Bright Horizons's flagship centers.

### III.    Early Success in Spite of the COVID-19 Pandemic

35.     But after the COVID-19 Pandemic hit in March 2020, Bright Horizons closed its West 96th location, and moved Ms. Brooks to its Columbus Circle location as a Field Director.

36.     Karen Alston, who was the Director at Columbus Circle at the time, went out on maternity leave at the start of the Pandemic, and Bright Horizon (specifically Stacy Mwonghozi and Anne-Marie Salmon) told Ms. Brooks that she could take over Columbus Circle as a Field

Director. Bright Horizons also told Ms. Brooks that Ms. Alston was unlikely to return after her maternity leave.

37.     During Ms. Brooks's short time at Columbus Circle, she again implemented creative solutions and turned Columbus Circle from a problem center into a well-oiled machine.

38.     Ms. Brooks implemented flexible scheduling at Columbus Circle which cut unnecessary costs and increased teacher satisfaction.

39.     Ms. Brooks implemented a wildly-successful community building initiative where she organized teachers into different groups to meet and discuss their challenges each week. Ms. Brooks scheduled individual weekly meetings with every teacher to make sure they were receiving the support they needed.

40.     Ms. Brooks also offered her mentorship to teachers and created opportunities for them to learn and grow. Specifically, Ms. Brook created a group called DEVCO (Development Cohort) for teachers who wanted to stretch their assignments and grow into leadership and administrative positions.

41.     In September 2020, Ms. Brooks also created the Diversity and Inclusion Council. As the co-chair of the Diversity and Inclusion Council, Ms. Brooks led difficult conversations about race, class, and identity to inform teachers and Bright Horizons's higher-ups on how to navigate issues related to race, class, and gender both in the workplace and through their work in early education. Karen Alston, Stacy Mwonghozi (Regional Manager), and Anne-Marie Salmon all expressed how impressed they were with Ms. Brooks's brief yet impactful work at Columbus Circle.

42.     In October 2020, Ms. Alston returned from maternity leave, and Bright Horizons transferred Ms. Brooks to become the Director at Weill Cornell Children's Center at East 62nd Street in Manhattan.

43.     During Ms. Brooks's first few months as the director of Weill Cornell – East 62nd St., she implemented and continued many of the same initiatives she started at Columbus Circle. She implemented a DEVCO group at Weill Cornell, she expanded the Diversity and Inclusion Council, she fostered community building by creating small working groups, she met individually with all of the teachers, and she implemented a flexible scheduling model.

44.     In addition to her duties as the Director at Weill Cornell, Ms. Brooks also managed the COVID-19 call center along with Kathy Irizarry, Ms. Brooks's administrative assistant and the Health and Safety Director at East 62nd.

45.     Ms. Brooks and Ms. Irizarry received and documented all the calls from parents about COVID-19 symptoms and infections. They monitored for possible infections while managing contact tracing for more than 100 students and teachers. They reported all COVID-19 cases and contact tracing to the "COVID team." The COVID team would give Ms. Brooks and Ms. Irizarry, and later Yenisbel Perez (Health and Safety Director who succeeded Ms. Irizarry), its recommendations for which students needed to quarantine and for how long.

46.     These recommendations fluctuated constantly as Bright Horizons adapted them to follow the ever-changing CDC guidelines and recommendations.

47.     During the Omicron variant outbreak in late 2020 and early 2021, Ms. Brooks received as many as 20 calls a week reporting COVID-19 infections. Weill Cornell is a medical center, so many of the parents of the students were medical professionals and first responders.

48.     Ms. Brooks also mentored Ms. Irizarry to be successful in an administrative role. Ms. Irizarry had worked as a teacher at East 62nd before being promoted to the Health and Safety Director. She confided in Ms. Brooks that she didn't feel like the other teachers respected her as an administrator because they saw her first as a teacher.

49.     At Ms. Irizarry's request, Ms. Brooks temporarily transferred Ms. Irizzary to Bright Horizons's DUMBO location as an interim Health and Safety Director around October 2020.

50.     Ms. Irizarry thrived at DUMBO. She said she was happier and that she was finally able to do her job once she shed the drama and history at East 62nd. Ms. Irizarry also thanked Ms. Brooks for her mentorship and said she felt prepared for success at DUMBO due to the training and mentorship Ms. Brooks had given her.

51.     After this interim period in December 2020, Ms. Irizarry asked Ms. Brooks to be transferred permanently. Ms. Irizarry told Ms. Brooks that she didn't think she could "truly be in a leadership position here (meaning Weill Cornell) because there's too much history." As such, Ms. Irizarry said she wanted a "fresh start." Ms. Brooks agreed and permanently transferred Ms. Irizarry.

## IV.    Robyn Carrone Becomes the Regional Manager of Weill Cornell – and the Discrimination Begins

52.     Around the same time in December 2020, Bright Horizons reorganized and appointed Robyn Carrone as the Regional Manager for the Weill Cornell centers.

53.     From the get-go, Ms. Carrone discriminated against Ms. Brooks and targeted her with hostility. In January 2021, during a one-on-one meeting, Ms. Carrone told Ms. Brooks that she "[was] not Lee Mirrer," who was Ms. Brooks previous Regional Manager. Ms. Carrone implied that she would be harsher to Ms. Brooks and that she thought Ms. Mirrer was too "soft."

54.     Ms. Carrone also explicitly stated that she did not trust Ms. Brooks. This was just one month after Ms. Brooks started reporting to Ms. Carrone.

55.     Around the same time, Ms. Carrone joined the Diversity and Inclusion Council sometime in the beginning of 2021. Ms. Carrone told Ms. Brooks that she was concerned that the others in the council would judge her because of her pro-police perspective. This was amidst the anti-police brutality protests in reaction to the murder of George Floyd and other Black civilians.

56.     Ms. Carrone told Ms. Brooks that she felt discriminated against because her husband is a police officer.

57.     When Ms. Brooks asked Ms. Carrone how she felt discriminated against, Ms. Carrone did not say.

58.     Ms. Carrone constantly micromanaged and scrutinized Ms. Brooks's work as soon as she became Ms. Brooks's supervisor.

59.     Ms. Carrone demanded to be copied on every email Ms. Brooks sent and to be invited to each of Ms. Brooks's staff meetings. Ms. Carrone even demanded to be included in the decisions on which snacks to order for the children.

60.     Additionally, Ms. Carrone's micromanagement constantly changed. At some points, Ms. Carrone would tell Ms. Brooks that she needed her permission before making a decision. But the next week, Ms. Carrone would tell Ms. Brooks that she needed to be more proactive and assertive and that she couldn't hold Ms. Brooks's hand.

61.     For instance, when Ms. Brooks tried implementing flexible scheduling at Weill Cornell, Ms. Carrone told Ms. Brooks she could not change how Bright Horizons scheduled its teachers—even though Ms. Brooks had implemented flexible scheduling at two other centers.

62.    While Ms. Carrone told Ms. Brooks that flexible scheduling was "not the Bright Horizons way." Ms. Carrone also claimed that teachers had complained about flexible scheduling, even though the teachers overwhelmingly supported flexible scheduling because it ensured they received full-time benefits. Ms. Carrone blamed Ms. Brooks for the teachers' supposed complaints about scheduling.

63.    Ms. Carrone criticized and scrutinized every decision Ms. Brooks tried to make. But when Ms. Brooks tried to ask Ms. Carrone for more feedback and guidance, Ms. Carrone would act annoyed and ignore Ms. Brooks.

64.    On April 7, 2021, Ms. Carrone told Ms. Brooks to quarantine a pair of twins. But when Ms. Brooks had spoken to the COVID team, they told her they did not need to quarantine the children because the children had not actually been exposed to COVID. Ms. Brooks explained this situation to Ms. Carrone, but Ms. Carrone responded that unless the COVID team spoke to her directly, she would not change her mind.

65.    When Ms. Brooks told Ms. Carrone that she was communicating exactly what the COVID team told her, Ms. Carrone snapped at Ms. Brooks verbally. "Why are you talking to the COVID team? Who told you to talk to them?" Ms. Carrone accused Ms. Brooks of "going rogue" even though it was Ms. Brooks's responsibility to coordinate with the COVID team.

66.    Ms. Carrone's characterization of Ms. Brooks as "rogue" followed gendered and racialized stereotypes that depict Black women as angry and dangerous. Even while Ms. Brooks followed the COVID protocols provided to her, Ms. Carrone was quick to label Ms. Brooks as insubordinate.

67.    In April 2021, Bright Horizons promoted Ms. Brooks to be the Executive Director for both the Weill Cornell Children's Center locations at 62nd Street and 60th Street. Ms.

Carrone told Ms. Brooks that her new role would focus on "people and enrollment." But when Ms. Brooks asked Bright Horizons to clarify the duties and to provide a job description, Bright Horizons did neither.

68.     While Ms. Brooks maintained her Director level responsibilities at the Weill Cornell – 62nd Street, she started working closely with the Director at Weill Cornell – 60th Street, Jenny Bae. Ms. Bae and Ms. Brooks both expressed confusion and concerns to Ms. Carrone about the extent of their job responsibilities.

69.     Shortly after April, Ms. Bae and Ms. Brooks met with Ms. Carrone to clarify the new reporting structure. While Ms. Carrone affirmed that Ms. Brooks was to supervise Ms. Bae, Ms. Carrone also said that Ms. Bae would report to Ms. Carrone. Again, Ms. Carrone did not provide a job description or a list of responsibilities for Ms. Brooks's new position as Executive Director. Ms. Bae and Ms. Brooks left this meeting even more confused than when they entered.

70.     Nonetheless, Ms. Bae and Ms. Brooks quickly built a solid relationship.

71.     Ms. Brooks consistently met with Ms. Bae and asked Ms. Bae for ways Bright Horizons and Ms. Brooks could support her.

72.     Ms. Bae is an Asian-American woman. Ms. Bae confided in Ms. Brooks that Ms. Carrone was discriminating against her. Ms. Bae said she felt like she was "walking on eggshells" around Ms. Carrone. Ms. Bae also said that Ms. Carrone spoke to her aggressively and would be dismissive of her questions.

73.     Ms. Bae told Ms. Brooks that Bright Horizons had not provided her any training and that Ms. Carrone was not giving her the tools or instruction to succeed in her role. Ms. Bae said she felt Ms. Carrone was targeting Ms. Bae and purposefully setting Ms. Bae up for failure.

Ms. Brooks reported Ms. Bae's complaints to Ms. Carrone several times between April 2021 and October 2021. But Ms. Carrone ignored these complaints and continued to pressure Ms. Bae.

74.     In October 2021, Ms. Bae resigned because of Ms. Carrone's discrimination and harassment. Bright Horizons replaced Ms. Bae with Caroline Moran, who is a White woman.

75.     Despite Ms. Bae's complaints against Ms. Carrone, Ms. Carrone falsely blamed Ms. Brooks for Ms. Bae's resignation and claimed that Ms. Brooks did not properly support Ms. Bae.

76.     But after Ms. Bae's resignation on January 10, 2022, Javonna Jean (Health and Safety Director at Weill Cornell – 62nd Street) told Ms. Brooks that Ms. Carrone had said that she "regretted hiring [Ms. Bae]" and that Ms. Bae was a "sour spot."

## V.     Ms. Carrone Prevents Ms. Brooks From Receiving Job Promotions and Calls for Investigations Against Ms. Brooks

77.     In November and December 2021, Ms. Brooks applied for a Regional Manager position at Bright Horizons. Ms. Brooks made it to the final round of interviews, but Bright Horizons ultimately did not select Ms. Brooks for the role.

78.     Bright Horizons ultimately hired Antonio Lopez for the Regional Manager position. Mr. Lopez did not have any prior experience supervising as was required on the job listing. On information and belief, Mr. Lopez is Latino and identifies as a man.

79.     After the final round, Ms. Carrone told Ms. Brooks that one of the reasons she didn't get the position was because she needed more experience managing people who are "not like [her]." Ms. Carrone's comment was racially-charged, so Ms. Brooks asked Ms. Carrone for clarification. In response, Ms. Carrone pointed to Ms. Bae's resignation as an alleged example. Ms. Bae is a woman around the same age as Ms. Brooks.

80.     Ms. Carrone told Ms. Brooks that she should have done more to support Ms. Bae and that it was Ms. Brooks's fault that Ms. Bae quit.

81.     Ms. Carrone also claimed that Ms. Brooks did not properly manage Ms. Irizarry. Specifically, Ms. Carrone claimed that Ms. Brooks targeted Ms. Irizarry by transferring her to another location, even though Ms. Irizarry had requested to be transferred.

82.     Ms. Carrone claimed that Ms. Brooks had "transferred the problem" away. Ms. Carrone said that Ms. Irizarry needed to be successful where she was and that she should have found replacement employment if she were unhappy.

83.     Ms. Brooks told Ms. Carrone that Ms. Irizarry had requested to be transferred to the DUMBO location and that her transfer had directly contributed to Ms. Irizarry's subsequent success. But Ms. Carrone ignored the facts and continued to blame Ms. Brooks.

84.     On December 16, 2021, Ms. Carrone gave Ms. Brooks an "above target" performance review. Bright Horizons praised Ms. Brooks for her sense of urgency, strong communication skills, and great parent engagement.

85.     But despite Ms. Brooks's "above target" performance, Ms. Carrone's discrimination and retaliation against Ms. Brooks increased.

86.     At the end of 2021 and beginning of 2022, Ms. Carrone began meeting individually with each of Ms. Brooks's direct reports. During these meetings, Ms. Carrone would ask Ms. Brooks's reports if they had any issues with her. Indeed, Ms. Carrone was constantly investigating Ms. Brooks and trying to find ways to get Ms. Brooks in trouble.

87.     For instance, in January 2022, Ms. Carrone accused DEVCO and Ms. Brooks of favoritism. Ms. Carrone wanted to shut DEVCO down. But the investigation found that Ms. Carrone's accusations were false.

**VI.**    **Ms. Brooks Reports Ms. Carrone's Discrimination, and Bright Horizons Retaliates**

88.    On February 24, 2022, Ms. Brooks called a meeting with Anne-Marie Salmon over Teams to discuss her compensation.

89.    Ms. Brooks reported that some of her direct reports—namely Caroline Moran—earned a higher salary than her despite being in a more junior position. Ms. Moran is a White woman.

90.    Ms. Salmon replied that the maximum Bright Horizons could raise anyone's salary was three percent. When Ms. Brooks asked if there was a pay grid for Executive Directors, Ms. Salmon deflected and again stated that three percent was the highest raise Bright Horizons could give.

91.    Ms. Brooks reported to Ms. Salmon that she felt underappreciated and demeaned by Ms. Carrone. Ms. Brooks explained that Ms. Carrone was constantly irritated at her and that Ms. Carrone chastised Ms. Brooks for doing everything wrong. Ms. Brooks told Ms. Salmon that she did not understand the boundaries of her job expectations and that Ms. Carrone had not provided her any clarification. Ms. Salmon acknowledged that Bright Horizons owed Ms. Brooks a job description but that it could not provide one at that time.

92.    Less than two weeks later on March 6, 2022, Ms. Carrone told Ms. Brooks that she was not allowed to come back to work. Ms. Carrone said that there was an allegation made against her, and that she was not allowed to come back to Weill Cornell until Bright Horizons conducted an investigation.

93.    Ms. Carrone said that Bright Horizons would provide Ms. Brooks updates and instructed her not to reach out to anyone. When Ms. Brooks asked Ms Carrone what specifically was alleged against her, Ms. Carrone refused to say.

94.     Later that day, Ms. Carrone called Ms. Brooks and explained that Bright Horizons was investigating Ms. Books for allegedly breaking COVID protocol. Ms. Carrone instructed Ms. Brooks to submit a statement responding to the allegations.

95.     On March 7, 2022, Ms. Brooks submitted a statement addressing the supposed allegation, explaining that she had followed the recommendations of the COVID team.

96.     On March 8, 2022, Bright Horizons officially put Ms. Brooks on administrative leave. Ms. Carrone leveled additional false allegations against Ms. Brooks.

97.     On March 9, 2022, Ms. Brooks submitted statements addressing the supposed allegations against her. For the next week, Ms. Carrone conducted a so-called investigation by pointedly asking Ms. Brook's colleagues if they had any issues with her. Bright Horizons "investigated" Ms. Brooks by papering her file and building a case to fire her.

98.     On March 14, 2022, Ms. Brooks reached out to Ms. Carrone and Ms. Salmon to see if there had been any updates on the investigation. Shortly after, Ms. Salmon and Bobby Ferro (HR Business Partner) invited Ms. Brooks into a Teams meeting. In this meeting, Ms. Carrone and Ms. Salmon told Ms. Brooks that their "investigation" had substantiated the allegations and that Bright Horizons was firing her.

99.     Ms. Salmon and Mr. Ferro instructed Ms. Brooks to notify the families and staff at Weill Cornell that she was resigning. They said that Ms. Brooks resigning would "make things easier with the families and staff." Ms. Brooks said that she would need to think about it.

100.    But on March 15, 2022, without permission from Ms. Brooks, Ms. Carrone sent a letter to all the families and staff stating that Ms. Brooks had resigned effective immediately for "another position."

101.   Ms. Brooks did not know Bright Horizons made this announcement until her former co-worker, Yenisbel Perez sent a copy of the letter to Ms. Brooks.

102.   Since her termination, Ms. Brooks has faced barriers gaining employment in other education positions. For example, Ms. Brooks applied for numerous teaching positions with the City of New York, but because Bright Horizons claimed had fired Ms. Brooks "for cause" - contrary to its own representations to parents and staff - Ms. Brooks was ultimately unable to gain employment.

103.   Despite diligent efforts, Ms. Brooks has been unable to secure full-time employment in the education field.

104.   As a result of Bright Horizons's unlawful conduct, Ms. Brooks has suffered loss of income, benefits, and other perquisites of employment, including continuing opportunities for promotion, advancement, recognition, and increased compensation.

105.   Bright Horizons's unlawful conduct has also caused Ms. Brooks tremendous emotional distress.

106.   Shortly after Bright Horizons fired her, Ms. Brooks started seeing a therapist to cope with the stress and trauma that Bright Horizons had inflicted on her life. Ms. Brooks has experienced persistent anxiety and depression as a result of Bright Horizons's unlawful conduct.

107.   Currently, Ms. Brooks works as the founder and CEO of Project 12.31, a non-profit aimed for creating service opportunities to connect the unhoused with the communities and people they live near.

108.   Ms. Brooks filed a timely charge with the Equal Employment Opportunity Commissio.

109.    The EEOC completed its administrative processing and issued a right-to-sue letter; Ms. Brooks has exhausted her administrative remedies.

110.    Ms. Brooks reserves the right to amend this action to raise any appropriate cause of action with relation back to the date of filing.

**FIRST CAUSE OF ACTION**
**Violation of 42 U.S.C. § 1981**
**Retaliation**

111.    Ms. Brooks incorporates each and every allegation of this Complaint as if fully set forth here.

112.    Ms. Brooks engaged in activity protected by 42 U.S.C. § 1981, including but not necessarily limited to speaking out against Robyn Carrone's discrimination against herself and Jenny Bae.

113.    Defendants took adverse action against Ms. Brooks because of her protected activity in a manner that indicates a but-for causal connection. Among other things, Bright Horizons retaliated by putting her on administrative leave less than two weeks after she made her protected complaint, and ultimately terminating her employment and spreading false information about her without authorization to parents and staff, as well as labeling her as terminated for cause to subsequent employers.

114.    As a direct and proximate result of Defendants' unlawful actions, Ms. Brooks has been damaged and continues to suffer damages, including but not limited to deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

115.    Defendants' actions were intentional, willful, wanton, malicious, and / or reflect a reckless disregard of Ms. Brooks's rights, justifying punitive damages.

116.    Ms. Brooks prays that the Court find Defendants liable for retaliation in violation of 42 U.S.C. § 1981, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

**SECOND CAUSE OF ACTION**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e, et seq.**
**Retaliation**

117.    Ms. Brooks repeats and realleges each and every allegation of this Complaint as if set forth herein.

118.    Ms. Brooks engaged in activity protected by Title VII, including but not necessarily limited to speaking out against Robyn Carrone's discrimination against herself and Jenny Bae.

119.    Defendants took adverse action against Ms. Brooks because of her protected activity. Among other things, Bright Horizons retaliated by putting her on administrative leave less than two weeks after she made her protected complaint, spreading false information about her without authorization to parents and staff, as well as labeling her as terminated for cause to subsequent employers.

120.    Ms. Brooks's protected activity was a motivating or other causally-sufficient factor in Defendants' actions.

121.    As a direct and proximate result of Defendants' unlawful actions, Ms. Brooks has been damaged and continues to suffer damages, including but not limited to deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering,

inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

122.    Defendants' actions were intentional, willful, wanton, malicious, and / or reflect a reckless disregard of Ms. Brooks's rights, justifying punitive damages.

123.    Ms. Brooks prays that this Court find Defendants liable for retaliation in violation of Title VII, and grant all relief permitted by law, as set forth in the Prayer to this Complaint.

### THIRD CAUSE OF ACTION
**Violation of the New York State Human Rights Law**
**N.Y. Exec. Law 290 et seq.**
**Retaliation**

124.    Ms. Brooks repeats and realleges each and every allegation of this Complaint as if set forth herein.

125.    Ms. Brooks engaged in activity protected by the New York City Human Rights Law, including but not necessarily limited to speaking out against Robyn Carrone's discrimination against herself and Jenny Bae.

126.    Defendants took adverse action against Ms. Brooks because of her protected activity. Among other things, Bright Horizons retaliated by putting her on administrative leave less than two weeks after she made her protected complaint, spreading false information about her without authorization to parents and staff, as well as labeling her as terminated for cause to subsequent employers.

127.    Ms. Brooks's protected activity was a motivating or other causally-sufficient factor in Defendants' actions.

128.    As a direct and proximate result of Defendants' unlawful actions, Ms. Brooks has been damaged and continues to suffer damages, including but not limited to deprivation of

income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

129.    Defendants' actions were intentional, willful, wanton, malicious, and / or reflect a reckless disregard of Ms. Brooks's rights, justifying punitive damages.

130.    Ms. Brooks prays that this Court find Defendants liable for retaliation in violation of the New York State Human Rights Law, and grant all relief permitted by law, as set forth in the Prayer to this Complaint.

**FOURTH CAUSE OF ACTION**
**Violation of the New York City Human Rights Law**
**N.Y.C. Admin. Code 8-101 et seq.**
**Retaliation**

131.    Ms. Brooks repeats and realleges each and every allegation of this Complaint as if set forth herein.

132.    Ms. Brooks engaged in activity protected by the New York City Human Rights Law, including but not necessarily limited to speaking out against Robyn Carrone's discrimination against herself and Jenny Bae.

133.    Defendants took adverse action against Ms. Brooks because of her protected activity. Among other things, Bright Horizons retaliated by putting her on administrative leave less than two weeks after she made her protected complaint, spreading false information about her without authorization to parents and staff, as well as labeling her as terminated for cause to subsequent employers.

134.    Ms. Brooks's protected activity was a motivating or other causally-sufficient factor in Defendants' actions.

135.    As a direct and proximate result of Defendants' unlawful actions, Ms. Brooks has been damaged and continues to suffer damages, including but not limited to deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

136.    Defendants' actions were intentional, willful, wanton, malicious, and / or reflect a reckless disregard of Ms. Brooks's rights, justifying punitive damages.

137.    Ms. Brooks prays that this Court find Defendants liable for retaliation in violation of the New York City Human Rights Law, and grant all relief permitted by law, as set forth in the Prayer to this Complaint.

### FIFTH CAUSE OF ACTION
**Violation of 42 U.S.C. § 1981**
**Discrimination on the Basis of Race**

138.    Ms. Brooks incorporates each and every allegation of this Complaint as if fully set forth here.

139.    Ms. Brooks is Black.

140.    Defendants discriminated against Ms. Brooks on account of her race in violation of 42 U.S.C. § 1981 by subjecting her to differential terms and conditions of employment, harassing her, subjecting her to a hostile environment, falsely accusing her of misconduct, suspending her, terminating her employment, spreading false information about her without authorization to parents and staff, and as labeling her as terminated for cause to subsequent employers.

141.    There was a but-for causal connection between Ms. Brooks's race and Defendants' actions.

22

142.    As a direct and proximate result of Defendants' unlawful actions, Ms. Brooks has been damaged and continues to suffer damages, including but not limited to deprivation of income and benefits, loss of employment opportunties, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

143.    Defendants' actions were intentional, willful, wanton, malicious, and / or reflect a reckless disregard of Ms. Brooks's rights, justifying punitive damages.

144.    Ms. Brooks prays that the Court find Defendants liable for race discrimination in violation of 42 U.S.C. § 1981, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

## SIXTH CAUSE OF ACTION
### Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e et seq.
### Discrimination on the Basis of Race

145.    Ms. Brooks incorporates each and every allegation of this Complaint as if fully set forth here.

146.    Ms. Brooks is Black.

147.    Defendants discriminated against Ms. Brooks on account of her race by subjecting her to differential terms and conditions of employment, harassing her, subjecting her to a hostile environment, falsely accusing her of misconduct, suspending her, terminating her employment, spreading false information about her without authorization to parents and staff, and as labeling her as terminated for cause to subsequent employers.

148.    Ms. Brooks's race was a motivating factor or other sufficient causal factor in Defendants' actions.

149.    As a direct and proximate result of Defendants' unlawful actions, Ms. Brooks has been damaged and continues to suffer damages, including but not limited to deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

150.    Defendants' actions were intentional, willful, wanton, malicious, and / or reflect a reckless disregard of Ms. Brooks's rights, justifying punitive damages.

151.    Ms. Brooks prays that the Court find Defendants liable for discrimination in violation of Title VII, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

### SEVENTH CAUSE OF ACTION
**Violation of the New York State Human Rights Law**
**N.Y. Exec. Law 290 et seq.**
**Discrimination on the Basis of Race**

152.    Ms. Brooks incorporates each and every allegation of this Complaint as if fully set forth here.

153.    Ms. Brooks is Black.

154.    Defendants discriminated against Ms. Brooks on account of her race by subjecting her to differential terms and conditions of employment, harassing her, subjecting her to a hostile environment, falsely accusing her of misconduct, suspending her, terminating her employment, spreading false information about her without authorization to parents and staff, and as labeling her as terminated for cause to subsequent employers.

155.    Ms. Brooks's race was a motivating factor or other sufficient causal factor in Defendants' actions.

156.     As a direct and proximate result of Defendants' unlawful actions, Ms. Brooks has been damaged and continues to suffer damages, including but not limited to deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

157.     Defendants' actions were intentional, willful, wanton, malicious, and / or reflect a reckless disregard of Ms. Brooks's rights, justifying punitive damages.

158.     Ms. Brooks prays that the Court find Defendants liable for discrimination in violation of the NYSHRL, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

### EIGHTH CAUSE OF ACTION
**Violation of the New York City Human Rights Law**
**N.Y.C. Admin. Code 8-101 et seq.**
**Discrimination on the Basis of Race**

159.     Ms. Brooks incorporates each and every allegation of this Complaint as if fully set forth here.

160.     Ms. Brooks is Black.

161.     Defendants discriminated against Ms. Brooks on account of her race by subjecting her to differential terms and conditions of employment, harassing her, subjecting her to a hostile environment, falsely accusing her of misconduct, suspending her, terminating her employment, spreading false information about her without authorization to parents and staff, and as labeling her as terminated for cause to subsequent employers.

162.     Ms. Brooks's race was a motivating factor or other sufficient causal factor in Defendants' actions.

163.    As a direct and proximate result of Defendants' unlawful actions, Ms. Brooks has been damaged and continues to suffer damages, including but not limited to deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

164.    Defendants' actions were intentional, willful, wanton, malicious, and / or reflect a reckless disregard of Ms. Brooks's rights, justifying punitive damages.

165.    Ms. Brooks prays that the Court find Defendants liable for discrimination in violation of the NYCHRL, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

### NINTH CAUSE OF ACTION
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e et seq.**
**Discrimination on the Basis of Sex**

166.    Ms. Brooks incorporates each and every allegation of this Complaint as if fully set forth here.

167.    Ms. Brooks is a woman.

168.    Defendants discriminated against Ms. Brooks on account of her sex by subjecting her to differential terms and conditions of employment, harassing her, subjecting her to a hostile environment, falsely accusing her of misconduct, suspending her, terminating her employment, spreading false information about her without authorization to parents and staff, and as labeling her as terminated for cause to subsequent employers.

169.    Ms. Brooks's sex was a motivating factor or other sufficient causal factor in Defendants' actions.

170.     As a direct and proximate result of Defendants' unlawful actions, Ms. Brooks has been damaged and continues to suffer damages, including but not limited to deprivation of income and benefits, loss of employment opportunties, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

171.     Defendants' actions were intentional, willful, wanton, malicious, and / or reflect a reckless disregard of Ms. Brooks's rights, justifying punitive damages.

172.     Ms. Brooks prays that the Court find Defendants liable for discrimination in violation of Title VII, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

**TENTH CAUSE OF ACTION**
**Violation of the New York State Human Rights Law**
**N.Y. Exec. Law 290 et seq.**
**Discrimination on the Basis of Sex**

173.     Ms. Brooks incorporates each and every allegation of this Complaint as if fully set forth here.

174.     Ms. Brooks is a woman.

175.     Defendants discriminated against Ms. Brooks on account of her sex by subjecting her to differential terms and conditions of employment, harassing her, subjecting her to a hostile environment, falsely accusing her of misconduct, suspending her, terminating her employment, spreading false information about her without authorization to parents and staff, and as labeling her as terminated for cause to subsequent employers.

176.     Ms. Brooks's sex was a motivating factor or other sufficient causal factor in Defendants' actions.

177.    As a direct and proximate result of Defendants' unlawful actions, Ms. Brooks has been damaged and continues to suffer damages, including but not limited to deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

178.    Defendants' actions were intentional, willful, wanton, malicious, and / or reflect a reckless disregard of Ms. Brooks's rights, justifying punitive damages.

179.    Ms. Brooks prays that the Court find Defendants liable for discrimination in violation of the NYSHRL, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

### ELEVENTH CAUSE OF ACTION
**Violation of the New York City Human Rights Law**
**N.Y.C. Admin. Code 8-101 et seq.**
**Discrimination on the Basis of Sex**

180.    Ms. Brooks incorporates each and every allegation of this Complaint as if fully set forth here.

181.    Ms. Brooks is a woman.

182.    Defendants discriminated against Ms. Brooks on account of her sex by subjecting her to differential terms and conditions of employment, harassing her, subjecting her to a hostile environment, falsely accusing her of misconduct, suspending her, terminating her employment, spreading false information about her without authorization to parents and staff, and as labeling her as terminated for cause to subsequent employers.

183.    Ms. Brooks's sex was a motivating factor or other sufficient causal factor in Defendants' actions.

184.     As a direct and proximate result of Defendants' unlawful actions, Ms. Brooks has been damaged and continues to suffer damages, including but not limited to deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

185.     Defendants' actions were intentional, willful, wanton, malicious, and / or reflect a reckless disregard of Ms. Brooks's rights, justifying punitive damages.

186.     Ms. Brooks prays that the Court find Defendants liable for discrimination in violation of the  NYCHRL, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

### TWELFTH CAUSE OF ACTION
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e et seq.**
**Discrimination on the Basis of Color**

187.     Ms. Brooks incorporates each and every allegation of this Complaint as if fully set forth here.

188.     Ms. Brooks is dark-skinned.

189.     Defendants discriminated against Ms. Brooks on account of her color by subjecting her to differential terms and conditions of employment, harassing her, subjecting her to a hostile environment, falsely accusing her of misconduct, suspending her, terminating her employment, spreading false information about her without authorization to parents and staff, and as labeling her as terminated for cause to subsequent employers.

190.     Ms. Brooks's color was a motivating factor or other sufficient causal factor in Defendants' actions.

191.    As a direct and proximate result of Defendants' unlawful actions, Ms. Brooks has been damaged and continues to suffer damages, including but not limited to deprivation of income and benefits, loss of employment opportunties, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

192.    Defendants' actions were intentional, willful, wanton, malicious, and / or reflect a reckless disregard of Ms. Brooks's rights, justifying punitive damages.

193.    Ms. Brooks prays that the Court find Defendants liable for discrimination in violation of the Title VII, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

## THIRTEENTH CAUSE OF ACTION
### Violation of the New York State Human Rights Law
### N.Y. Exec. Law 290 et seq.
### Discrimination on the Basis of Color

194.    Ms. Brooks incorporates each and every allegation of this Complaint as if fully set forth here.

195.    Ms. Brooks is dark-skinned.

196.    Defendants discriminated against Ms. Brooks on account of her color by subjecting her to differential terms and conditions of employment, harassing her, subjecting her to a hostile environment, falsely accusing her of misconduct, suspending her, terminating her employment, spreading false information about her without authorization to parents and staff, and as labeling her as terminated for cause to subsequent employers.

197.    Ms. Brooks's color was a motivating factor or other sufficient causal factor in Defendants' actions.

198.     As a direct and proximate result of Defendants' unlawful actions, Ms. Brooks has been damaged and continues to suffer damages, including but not limited to deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

199.     Defendants' actions were intentional, willful, wanton, malicious, and / or reflect a reckless disregard of Ms. Brooks's rights, justifying punitive damages.

200.     Ms. Brooks prays that the Court find Defendants liable for discrimination in violation of the NYSHRL, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

**FOURTEENTH CAUSE OF ACTION**
**Violation of the New York City Human Rights Law**
**N.Y.C. Admin. Code 8-101 et seq.**
**Discrimination on the Basis of Color**

201.     Ms. Brooks incorporates each and every allegation of this Complaint as if fully set forth here.

202.     Ms. Brooks is dark-skinned.

203.     Defendants discriminated against Ms. Brooks on account of her color by subjecting her to differential terms and conditions of employment, harassing her, subjecting her to a hostile environment, falsely accusing her of misconduct, suspending her, terminating her employment, spreading false information about her without authorization to parents and staff, and as labeling her as terminated for cause to subsequent employers.

204.     Ms. Brooks's color was a motivating factor or other sufficient causal factor in Defendants' actions.

205.     As a direct and proximate result of Defendants' unlawful actions, Ms. Brooks has been damaged and continues to suffer damages, including but not limited to deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

206.     Defendants' actions were intentional, willful, wanton, malicious, and / or reflect a reckless disregard of Ms. Brooks's rights, justifying punitive damages.

207.     Ms. Brooks prays that the Court find Defendants liable for discrimination in violation of the  NYCHRL, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

## FIFTEENTH CAUSE OF ACTION
### Violation of Section 1981, Title VII, the NYSHRL, and the NYCHRL
### Combination Discrimination

208.     Ms. Brooks incorporates each and every allegation of this Complaint as if fully set forth here.

209.     In addition to discriminating against Ms. Brooks on each of the grounds stated above, Bright Horizons discriminated against Ms. Brooks based on her combination of two or more following traits, each of which is protected by law:  sex (female), race (Black), color (dark-skinned), and having made protected complaints of discrimination.

210.     Defendants engaged in the following adverse acts against Ms. Brooks:  subjecting her to differential terms and conditions of employment, harassing her, subjecting her to a hostile environment, falsely accusing her of misconduct, suspending her, terminating her employment, spreading false information about her without authorization to parents and staff, and as labeling her as terminated for cause to subsequent employers.

211.    In particular, Bright Horizons discriminates and retaliates against women of color, especially those who raise discrimination concerns.

212.    As recognized under *Back v. Hastings On Hudson Union Free School District*, 365 F.3d 107, 118 (2d Cir. 2004) and analogous cases, the combination of any or all of these protected characteristics are also prohibited grounds for Bright Horizons' actions.

213.    As a direct and proximate result of Defendants' unlawful actions, Ms. Brooks has been damaged and continues to suffer damages, including but not limited to deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

214.    Defendants' actions were intentional, willful, wanton, malicious, and / or reflect a reckless disregard of Ms. Brooks's rights, justifying punitive damages.

215.    Ms. Brooks prays that this Court find Defendants liable for combination discrimination as prohibited under Section 1981, Title VII, the NYSHRL, and the NYCHRL, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

## JURY DEMAND

Ms. Brooks respectfully demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Ms. Brooks respectfully requests that this Court grant judgment for her and order the following relief against Defendants:

(1)    A declaratory judgment that the acts, policies, practices, and procedures complained of herein violated Ms. Brooks's rights as secured by Section 1981, the New York

State Human Rights Law, N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.;

(2)    Reinstatement to the highest position to which Ms. Brooks was and would be entitled and/or front pay;

(3)    Compensatory damages in the form of:

(a)    back pay with interest based on Ms. Brook's appropriate compensation had she not been wrongfully terminated;

(b)    unpaid overtime wages;

(c)    reimbursement for social security, experience, training opportunities, and other benefits, in an amount to be proved at trial; and

(d)    damages for emotional pain and suffering, inconvenience, mental anguish, humiliation, and loss of reputation in an amount to be proved at trial;

(e)    damages for future economic loss;

(4)    Liquidated damages and penalties;

(5)    Punitive damages;

(6)    Statutory attorneys' fees, expert fees, costs, and disbursements;

(7)    Interest; and

(8)    Such other and/or further relief as the Court deems just and proper.


Dated: August 11, 2024                    Respectfully submitted,
New York, New York

                                          KEENAN & BHATIA, LLC

                                          _/s/ E.E. Keenan_
                                          Edward ("E.E.") Keenan
                                          Chloe Liederman
                                          233 Broadway, Suite 1810

New York, NY 10279
Tel: (212) 470-2560
chloe@keenanfirm.com
ee@keenanfirm.com

*Attorneys for Plaintiff Amanda Brooks*