UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMANDA BROOKS,

Plaintiff,

-v-

BRIGHT HORIZONS FAMILY SOLUTIONS, INC. *et al.*,

Defendants.

---

24 Civ. 6076 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Amanda Brooks here sues Bright Horizons Family Solutions, Inc., Bright Horizons Family Solutions LLC, Bright Horizons Capital Corp., Bright Horizons Children's Centers LLC, Bright Horizons Children's Centers, Inc., and Bright Horizons LLC (collectively, "defendants" or "Bright Horizons"), claiming discrimination and retaliation based on race, color, and sex.  Brooks's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* ("NYCHRL").

Bright Horizons now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court dismisses Brooks's federal claims and declines to exercise supplemental jurisdiction over her state- and local-law claims.

## I.    Background

### A.    Factual Allegations[1]

Brooks is a Black woman who resides in New York City.  AC ¶¶ 1, 28.  She has a

master's degree in education and more than 15 years teaching experience.  *Id.* ¶¶ 24, 26.  The

defendant entities are businesses providing day care and early-childhood education.  *Id.* ¶¶ 15,

18.  Brooks alleges that the individual Bright Horizons defendants are related entities that acted

in concert with one another.[2]  *Id.* ¶ 20.

Between 2017 and 2022, Brooks was employed by Bright Horizons in multiple roles,

including as a director, field director, and executive director at various Bright Horizons locations.

*Id.* ¶¶ 27, 35, 76.  Brooks consistently received positive feedback during her first three years at

the company.  *Id.* ¶¶ 30–31.  In October 2020, Bright Horizons appointed her director of the

Weill Cornell Children's Center at 62nd Street (the "62nd Street Location").  *Id.* ¶ 46.

In December 2020, after a company reorganization, Brooks was placed under the

supervision of Robyn Carrone, a regional manager at Bright Horizons.  *Id.* ¶¶ 56–57.  Carrone

supervised nearly a half-dozen center directors; Brooks alone was Black.  *Id.* ¶ 57.  Brooks's AC

---

[1] The following undisputed facts, assumed true for purposes of this motion, *see Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024), are drawn from the Amended Complaint, Dkt. 17 ("AC").

[2] The AC does not factually differentiate between the defendants.  Under Federal Rule of Civil Procedure 8, a complaint must "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."  *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001).  However, it may be appropriate to refer to defendants collectively where, as here, the defendants are "related corporate entities, as opposed to unaffiliated entities or individuals, accused of acting in concert."  *Kashef v. BNP Paribas SA*, No. 16 Civ. 3228, 2021 WL 1614406, at *2 (S.D.N.Y. Apr. 26, 2021); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Surgalign Spine Techs., Inc.*, No. 22 Civ. 9870, 2024 WL 477031, at *5 (S.D.N.Y. Feb. 7, 2024) ("[N]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant.").  The Court thus puts aside defendants' argument that the AC contains impermissible group pleading.

alleges that Carrone targeted Brooks "with hostility that she did not display toward the other directors." *Id.* ¶ 58. Specifically, it alleges, Carrone exhibited a lack of friendliness towards Brooks as compared to the other directors, demanded to be copied on all emails Brooks sent, and gave Brooks "constantly chang[ing]" instructions. *Id.* ¶¶ 60, 62, 64. Brooks also alleges that Carrone made insensitive remarks towards her that Brooks construed as racial in nature. For example, in April 2021, Carrone "snapped" at Brooks for communicating with a COVID-19 response team directly regarding a decision to quarantine students, accusing her of "going rogue." *Id.* ¶ 73.

In April 2021, Brooks was promoted to executive director for the 62nd Street Location and a separate Weill Cornell Children's Center at 60th Street (the "60th Street Location"). *Id.* ¶ 76. In that role, Brooks was responsible for supervising Jenny Bae, the director of the 60th Street Location. *Id.* ¶¶ 78–79. Although Brooks was Bae's direct supervisor, Bae was instructed to report to Brooks and Carrone. *Id.* ¶ 79. Bae confided in Brooks that Carrone was dismissive of her and made her feel "marginalized" because "Ms. Bae was Asian." *Id.* ¶¶ 82–84. Between April 2021 and October 2021, Brooks reported these complaints to Carrone. *Id.* ¶ 85. Carrone responded to Brooks that "[Bae will] have to figure it out." *Id.* In October 2021, Bae resigned from her position. *Id.* ¶ 86.

In November and December 2021, Brooks applied, unsuccessfully, for a regional manager position at Bright Horizons. *Id.* ¶ 89. A non-white Latino man, Antonio Lopez, was appointed to the post. *Id.* ¶ 90. Carrone told Brooks she had been passed over for the position because she lacked experience managing employees who are "not like [her]," citing Brooks's management of Bae and another employee (a non-Black Latina woman). *Id.* ¶¶ 91, 93. Carrone later gave Brooks a positive performance review, *id.* ¶ 96, although she told Brooks that "she did

not like the way Ms. Brooks asked questions," in that Brooks's manner of speech was "too pointed and direct," *id.* ¶ 97. The AC further alleges that, around this time, Carrone began meeting with individuals Brooks supervised to "find ways to get Ms. Brooks in trouble." *Id.* ¶¶ 99–100.

On February 24, 2022, Brooks met with a Bright Horizons vice president, Anne-Marie Salmon, to discuss compensation concerns. *Id.* ¶¶ 34, 104–05. Brooks noted to Salmon that one person she supervised—a white woman—earned a higher salary than Brooks despite her junior position. *Id.* ¶ 105. Brooks alleges she told Salmon that she felt "underappreciated and demeaned" by Carrone, that Carrone was "constantly irritated" at her, and that Carrone "chastised Ms. Brooks for doing everything wrong." *Id.* ¶ 107.

On March 6, 2022, less than two weeks after Brooks's meeting with Salmon, Carrone banned Brooks from the Weill Cornell workplace pending the outcome of a company investigation related to a breach of COVID-19 protocols. *Id.* ¶¶ 108, 110. On March 14, 2022, Bright Horizons fired Brooks. *Id.* ¶ 115.

### B.    Procedural History

On August 11, 2024, Brooks filed an initial Complaint. Dkt. 1. On October 8, 2024, defendants moved to dismiss. Dkt. 10. On October 11, 2024, the Court issued an order directing Brooks to amend the Complaint or oppose the motion. Dkt. 13. On November 7, 2024, Brooks filed the AC, the operative complaint today, which claims discrimination and retaliation based on race, color, and sex under Title VII, Section 1981, NYSHRL, and the NYCHRL. Dkt. 17. On December 5, 2024, defendants renewed their motion to dismiss. Dkt. 20 ("Def. Br."). On February 3, 2025, Brooks opposed. Dkt. 29 ("Pl. Br."). On February 27, 2025, defendants replied. Dkt. 32.

## II.    Discussion

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *See St. John's Univ.*, 91 F.4th at 651. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (cleaned up). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### A.    Applicable Legal Principles

#### 1.    Title VII

##### a.    Discrimination

Under Title VII, it is unlawful for an employer to "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). A plaintiff bears the burden of establishing a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To meet this burden, a plaintiff must establish that she was (1) a member of a protected class, (2) qualified for the position, and (3) subject to an adverse employment action, and that (4) the circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See Walsh v. New York City Hous. Auth.*, 828 F.3d

5

70, 75 (2d Cir. 2016). If all four elements are met, the burden shifts to the defendant to provide a

nondiscriminatory reason for the adverse action. *See McDonnell Douglas*, 411 U.S. at 802.

A Title VII plaintiff is not required to make this full showing at the pleadings stage. *See*

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). On a motion to

dismiss, a plaintiff carries a "relaxed" burden and need only plead the following "reduced

requirements":

> (1) that [plaintiff] is a member of a protected class; (2) that [plaintiff] was qualified
> for employment in the position; (3) that [plaintiff] suffered an adverse employment
> action; and, in addition, has (4) some minimal evidence suggesting an inference
> that the employer acted with discriminatory motivation.

*Littlejohn v. City of New York*, 795 F.3d 297, 307, 311 (2d Cir. 2015) (citing *McDonnell*

*Douglas*, 411 U.S. at 802). To support this "minimal inference" of discriminatory motivation, *id.*

at 311, a plaintiff may "alleg[e] facts that directly show discrimination or facts that indirectly

show discrimination by giving rise to a plausible inference of discrimination," *Vega*, 801 F.3d at

87.

### b.     Retaliation

Title VII forbids an employer from discriminating against an employee because the

employee "has opposed any practice made an unlawful employment practice by this subchapter,

or because [s]he has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework above.

*See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). To demonstrate a *prima facie* case of

retaliation, a plaintiff must establish (1) participation in a protected activity; (2) that the

defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal

connection between the protected activity and the adverse employment action. *See id.*

As with discrimination claims, at the motion-to-dismiss stage, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Littlejohn*, 795 F.3d at 316). A plaintiff can survive a motion to dismiss either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (citation omitted).

### 2.    Section 1981

Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). It "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004). Claims for discrimination and retaliation under Section 1981 are analyzed under the same *McDonnell Douglas* burden-shifting framework applicable to Title VII claims. *See Moore v. Hadestown Broadway Ltd. Liab. Co.*, 722 F. Supp. 3d 229, 246 (S.D.N.Y. 2024); *see also Hyunmi Son v. Reina Bijoux, Inc.*, 823 F. Supp. 2d 238, 242 (S.D.N.Y. 2011) ("Employment discrimination claims brought under section 1981 are generally analyzed under the same evidentiary framework that applies to Title VII[.]").

**B.    Application**

**1.    Timeliness**

Bright Horizons first argues that the AC's Title VII claims are largely time-barred. *See* Def. Br. at 9. For a Title VII claim to be actionable, a plaintiff must file an Equal Employment Opportunity Commission ("EEOC") charge within 300 days of an alleged discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1). Recovery for discrete acts of discrimination or retaliation outside the statutory time period are barred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) ("[A] discrete retaliatory or discriminatory act occurred on the day that it happened." (citation omitted)). An exception exists for continuing violations, where "a plaintiff experiences a continuous practice and policy of discrimination" for which "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (cleaned up). However, "serial violations—a series of discrete but related acts of discrimination—do not warrant application of the continuing violations doctrine." *Milani v. Int'l Bus. Machines Corp.*, 322 F. Supp. 2d 434, 452 (S.D.N.Y. 2004), *aff'd*, 137 F. App'x 430 (2d Cir. 2005).

Here, Brooks filed her EEOC charge on January 1, 2023. Dkt. 21, Ex. A. As such, claims based on events before March 7, 2022 are presumptively time-barred. Bright Horizons thus argues that the AC's only timely allegations under Title VII are those arising from Brooks's placement on administrative leave on March 8, 2022 and her termination on March 14, 2022, and that the Court should narrow the Title VII claims to exclude claims based on earlier actions. *See* Def. Br. at 9.

Brooks counters by invoking the continuing violations doctrine as a basis to preserve claims based on conduct before March 7, 2022. *See* Pl. Br. at 30. But the AC pleads only

discrete acts, and does not plead any discriminatory policy or practice of a continuing nature, "such as use of discriminatory seniority lists or employment tests," which permit liability based on "all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996). And the pre-March 7, 2022 allegations in the AC to which Brooks points are of discrete comments towards her and of one-off workplace slights. *See, e.g.*, AC ¶ 73 (Carrone accusing Brooks of "going rogue" when contacting a COVID-19 team independently); *id.* ¶¶ 89–91 (Carrone claiming Brooks lacks experience managing people "not like [her]"); *id.* ¶ 99 (Carrone soliciting criticisms of Brooks from other employees). But discrete acts such as "offensive or racist comments," *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 445 (S.D.N.Y. 2023), or "punitive transfers, undesirable assignments, and poor performance reviews," *Birch v. City of New York*, 675 F. App'x 43, 44 (2d Cir. 2017), cannot form the basis of a continuing violation, *see id.*; *see also Gutierrez v. City of New York*, 756 F. Supp. 2d 491, 500 (S.D.N.Y. 2010).

The Court therefore limits the scope of the Title VII claims to actions by defendants on or after March 7, 2022. *See, e.g.*, *Clarke v. InterContinental Hotels Grp., PLC*, No. 12 Civ. 2671, 2013 WL 2358596, at *8 (S.D.N.Y. May 30, 2013) (dismissing claims based on discrete acts occurring outside the 300-day period); *Lioi v. New York City Dep't of Health & Mental Hygiene*, 914 F. Supp. 2d 567, 585 (S.D.N.Y. 2012) (similar); *Alston v. Microsoft Corp.*, No. 8 Civ. 3547, 2009 WL 1116360, at *7 (S.D.N.Y. Apr. 27, 2009) (similar).

Claims brought under § 1981, however, are subject to a four-year statute of limitations. *Lawson v. Rochester City Sch. Dist.*, 446 F. App'x. 327, 328 (2d Cir. 2011). The Court thus considers the pre-March 7, 2022 allegations as relevant to the claims brought under that statute.

### 2.    Race and Color Discrimination[3]

The AC brings claims of discrimination based on race and color under Title VII and race under § 1981. The pleadings undisputedly satisfy the first three *McDonnell Douglas* factors: Brooks (1) is a member of a protected class, (2) is qualified for her position, and (3) was subject to at least one adverse employment action. But defendants dispute that the AC pleads facts sufficient to give rise to the inference that any adverse action occurred under circumstances giving rise to an inference of discrimination. *See Walsh*, 828 F.3d at 75.

An inference of discrimination may arise from various circumstances, including "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). No such circumstance is adequately pled here.

To begin with, the AC is devoid of non-conclusory allegations that Brooks was treated differently from non-Black employees at Bright Horizons (or that Black employees in general were treated less well than others). It alleges generally that "Ms. Carrone discriminated against Ms. Brooks—the only Black director she supervised—and targeted her with hostility that she did not display toward the other directors," and that "Carrone was much friendlier with the other (*i.e.*, non-Black) directors she supervised." AC ¶¶ 58, 60. But it does not allege more. And

---

[3] In the employment discrimination context, courts frequently analyze claims for race and color discrimination together when the same underlying facts support both. *See Matthews v. City of New York*, No. 23 Civ. 3959, 2024 WL 4135483, at *5 (S.D.N.Y. Sept. 10, 2024); *Batiste v. City Univ. of New York*, No. 16 Civ. 3358, 2017 WL 2912525, at *8 (S.D.N.Y. July 7, 2017); *Blige v. City Univ. of New York*, No. 15 Civ. 8873, 2017 WL 498580, at *8 (S.D.N.Y. Jan. 19, 2017), *report and recommendation adopted*, No. 15 Civ. 8873, 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017).

without the required "factual amplification," these conclusory statements are "simply not sufficient to nudge her claims across the line from conceivable to plausible." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (cleaned up).

This Court's recent decision in *Budhan v. Brightworks Sustainability LLC* is instructive. No. 24 Civ. 5104, 2025 WL 919926 (S.D.N.Y. Mar. 26, 2025). There, a Black employee sued her employer for race discrimination under Title VII and Section 1981. *See id.* at *1. The plaintiff's complaint alleged in generic and conclusory terms that she had been "treated differently from non-Black materials analysts and other non-Black employees," but it did not plead any specific instance of discriminatory conduct or identify any similarly situated comparator. *Id.* at *5. The Court dismissed her claim because the Complaint failed to "plead facts supporting the general claim of a difference of treatment between Budhan and others, let alone supply details minimally supporting that the difference in treatment accorded Budhan and her putative comparators was due to their different races." *Id.* (citing *Henry*, 18 F. Supp. 3d at 408 (dismissing similar claims where complaint "failed to describe who the comparators are, what their responsibilities were, how their workplace conduct compared to plaintiff's, or how they were treated" (cleaned up)); *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 255 (2d Cir. 2014) (complaint must, to show substantial similarity, allege "the jobs compared entail common duties or content, and do not simply overlap in titles or classifications"). The same is so here. To the extent that the AC contains nods about putative comparators, it nowhere alleges that any such person was "similarly situated in all material respects" to Brooks. *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) (citation omitted).

Nor does the AC credibly allege that anyone at Bright Horizons made racially derogatory remarks or remarks plausibly alleged to carry racial connotations. The AC cites several stray

remarks by Carrone to Brooks, notably her statements that Brooks was "going rogue" in coordinating with a COVID-19 team, that Brooks lacked experience managing people "not like [her]," and that Brooks should be "mindful of perception—questioning/directions." AC ¶¶ 73, 91, 97.

These remarks, however, are each facially neutral.[4] More is required for such remarks to be plausibly pled as coded references to race. And to give rise to an inference of discriminatory intent, it is not enough that such remarks were made to a member of a protected class. *See, e.g.*, *Smith v. City of New York*, 385 F. Supp. 3d 323, 340 (S.D.N.Y. 2019) (employer's statement that he "was not going to take it easy" on a Black employee did not support inference of racial discrimination where context was race-neutral); *LeeHim v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 3838, 2017 WL 5634128, at *4 (S.D.N.Y. Nov. 21, 2017) (employer's terming an employee "not a team player" and "too aggressive" did not support an inference of discrimination based on a protected characteristic); *Thelwell v. City of New York*, No. 13 Civ. 1260, 2015 WL 4545881, at *11 (S.D.N.Y. July 28, 2015) (employer's use of words such as "angry" and "abrasive," without more, did not convey racial animus), *aff'd*, 733 F. App'x 561 (2d Cir. 2018). And Brooks's

---

[4] The only one of these remarks that even potentially could be viewed otherwise is the statement that Brooks lacked experience managing people "not like [her]." AC ¶ 91. But the AC does not plead a factual basis upon which to infer that this comment referred to race. On the contrary, as pled, it was made in the context of other comments to Brooks in a prosaic conversation that did not suggest a racial subtext. For example, Carrone told Brooks that she should have done more to support Bae after Bae's complaints, *id.* ¶ 92, and that Brooks had not properly managed another employee whom she transferred to a different location, *id.* ¶ 93. Brooks alleges that Carrone's critique was unjustified, *id.* ¶ 94, but nothing about that workaday grievance implies racial animus. *See Lettieri v. Anti-Defamation League Found.*, No. 22 Civ. 9889, 2023 WL 5152447, at *7 (S.D.N.Y. Aug. 10, 2023) ("[G]eneralized hostility or generally uncivilized behavior is not actionable. . . . The defendant's offending conduct must have been keyed to a protected characteristic of the plaintiff."); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) ("It is not enough that a plaintiff has an overbearing or obnoxious boss."); *see also id.* at 111 ("[P]etty slights and trivial inconveniences" do not sustain a discrimination claim).

subjective perception that Carrone's comments related to race and bespoke race-based hostility does not, without more, support that conclusion. *See, e.g., Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 120 (S.D.N.Y. 2022) ("It is well established that a plaintiff's feelings and perceptions of being discriminated against are not evidence of discrimination." (cleaned up)); *Humphries v. City Univ. of New York*, No. 13 Civ. 2641, 2013 WL 6196561, at *9 (S.D.N.Y. Nov. 26, 2013) (same); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) (same).

Moreover, even assuming that Carrone's remarks were plausibly pled to carry a racial undertone, "verbal comments" require "causal nexus to the termination decision" to give rise to an inference of discrimination. *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (citing *Williams v. Victoria's Secret*, No. 15 Civ. 4715, 2017 WL 1162908, at *8 (S.D.N.Y. Mar. 28, 2017)). And "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Galimore v. City Univ. of New York Bronx Cmty. Coll.*, 641 F. Supp. 2d 269, 284 (S.D.N.Y. 2009) (citing *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007)).

Carrone's stray remarks here were far afield from the two principal adverse actions by Bright Horizons on which Brooks can attempt to base a claim: its placement of her on administrative leave (March 8, 2022), and its termination of her employment (March 14, 2022). These remarks did not occur in the course of the events leading to Brooks' termination. And they occurred many months earlier—in 2021—with the earliest remark (that Brooks had been "going rogue") made in April 2021 and the latest (that Brooks lacked experience supervising people "not like [her]") in November 2021. AC ¶¶ 72–73, 89–91. These are too remote in time from the adverse actions for an inference of causation to arise from the temporal proximity of events. *See, e.g., Suarez v. New York Cnty. Dist. Attorney's Off.*, No. 22 Civ. 10855, 2025 WL

894516, at *15 (S.D.N.Y. Mar. 24, 2025) ("[M]ost courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference.").  And to the extent Brooks seeks to base a claim on a third adverse action, Bright Horizons's failure to promote her in December 2021,[5] such is in close temporal proximity only to Carrone's remark to Brooks about employees "not like [her]."  But as reviewed above, *see supra* n.4, the AC does not connect that comment to race.  There is thus no "causal nexus" tying the failure to promote to Brooks's race.  *Luka*, 263 F. Supp. 3d at 487.

In her most substantial argument, Brooks argues that racial discrimination by Bright Horizons can be inferred because the person who succeeded her is white.  *See* Pl. Br. at 20–21. Although replacement by a non-member of a protected class had been held to plead the required inference of discrimination, *see Littlejohn*, 795 F.3d at 312–13, the Second Circuit has more recently cautioned that the succession of an employee by a person outside the protected class, standing alone, cannot give rise to a plausible inference of discrimination, *see Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 32 (2d Cir. 2016) ("[W]ithout more, the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive."); *Franchino v. Terence Cardinal Cook Health Care Ctr., Inc.*, 692 F. App'x 39, 43 (2d Cir. 2017) (courts "may not consider a particular allegation in isolation" in the employment-discrimination context).  Here, there is nothing more.  That a white woman succeeded Brooks does not cause the AC—otherwise devoid of support that Brooks's termination resulted from racial discrimination —to plausibly so plead.  *See, e.g., Baptiste v. City Univ. of New York*, 680 F. Supp. 3d 415, 423 (S.D.N.Y. 2023) (replacement of a Black woman by a white woman, standing alone, did not give

---

[5] The failure-to-promote incident is time-barred as to the Title VII claims.  The Court considers it here only with respect to the § 1981 claim.

14

rise to a "minimum inference of racial discrimination"); *Mansaray v. Kraus Sec. Serv.*, No. 20 Civ. 1415, 2022 WL 445790, at \*3 (S.D.N.Y. Feb. 14, 2022) ("[T]he fact that Plaintiff was replaced by security guards with less seniority who were not of African descent" did not, on its own, plausibly plead a discrimination claim); *cf. Cocca-Rau v. Standard Ins. Co.*, No. 19 Civ. 6149, 2020 WL 4207442, at \*8 (S.D.N.Y. July 22, 2020) (a "single allegation" that the replacement was outside the protected class does not provide the "requisite minimal inference").

In sum, the AC does not plead facts to make plausible its claim that Brooks suffered an adverse employment action based on race or skin color. A "generic allegation of disparate treatment" that lacks "factual amplification" does not nudge "the plaintiff's claims across the line from conceivable to plausible." *Henry*, 18 F. Supp. 3d at 408 (cleaned up); *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 98 (S.D.N.Y. 2023) (same); *Toussaint v. City of New York*, No. 19 Civ. 1239, 2020 WL 3978317, at \*6 (S.D.N.Y. June 29, 2020) (same); *Whittle v. Cnty. of Sullivan*, No. 16 Civ. 725, 2017 WL 5197154, at \*7 (S.D.N.Y. Nov. 8, 2017) (same). The Court thus dismisses the AC's Title VII and Section 1981 claims alleging race discrimination.[6]

---

[6] Although not necessary to this holding, the AC further undermines these claims by disclosing a race-neutral explanation for Brooks's termination: Bright Horizons determination that a center under Brooks's supervision had breached its COVID-19 protocols. AC ¶ 110, 115. Bright Horizons cited this lapse in firing Brooks. *See id.* The AC faults Bright Horizons for not also terminating another direct report of Brooks whom it contends was more immediately responsible for the COVID-19 breach, *id.* ¶ 16, but it does not dispute the fact of this breach occurred on Brooks's watch, *see Budhan*, 2025 WL 919926, at \*5 (dismissing discrimination claim because "even if the conclusory claim of a difference in treatment had been well-pled, the Complaint supplies an obvious benign (and unrefuted) inference explaining it").

### 3.    Sex Discrimination

The AC separately alleges sex discrimination in violation of Title VII. This claim is based on Bright Horizons's having passed over Brooks to promote a male candidate, Antonio Lopez, for a regional manager position, in December 2021. AC ¶¶ 89–90.

This claim, however, is time-barred. As noted *supra*, Section II.B.1, the Court limits the scope of the Title VII claims to actions by defendants on or after March 7, 2022. The December 2021 non-promotion is therefore untimely and, for that reason, dismissed. *See Dowdy v. City of New York*, No. 22 Civ. 6284, 2025 WL 965084, at *11 (S.D.N.Y. Mar. 31, 2025) (dismissing untimely Title VII claim); *Ahmad v. N.Y.C Health & Hosps. Corp.*, No. 20 Civ. 675, 2021 WL 1225875, at *14 (S.D.N.Y. Mar. 31, 2021) (same).

### 4.    Retaliation

Brooks, finally, claims she was retaliated against in violation of Title VII and Section 1981. To plead a retaliation claim under these statutes, the complaint must plausibly allege that (1) the plaintiff participated in a protected activity, (2) the defendant knew of the protected activity, (3) the plaintiff suffered an adverse employment action, and (4) there is a causal connection between the plaintiff's protected activity and the adverse employment action. *See Moore*, 722 F. Supp. 3d at 246.

A protected activity need not consist of a formal complaint; it can include "informal protests of discriminatory employment practices." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Complaining to a supervisor, instituting litigation, or filing a formal complaint about the defendant's discriminatory conduct are, for example, each considered protected activities. *See Moore*, 722 F. Supp. 3d at 246. Adverse employment actions include "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548

16

U.S. 53, 57 (2006)). Termination and non-promotion are paradigmatic adverse employment

actions under the *McDonnell Douglas* framework. *See Wheeler v. Praxair Surface Techs.*, 694

F. Supp. 3d 432, 456 (S.D.N.Y. 2023); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761

(1998) (quintessential examples of adverse employment actions are hiring, firing, and failing to

promote). A plaintiff can plausibly allege that participation in a protected activity caused an

adverse employment action either "(1) indirectly, by showing that the protected activity was

followed closely by discriminatory treatment, or through other circumstantial evidence such as

disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through

evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795

F.3d at 319 (citation omitted).

Brooks here alleges she was retaliated against twice: (1) in December 2021, when Bright

Horizons did not promote her for the regional manager job, allegedly in response for her having

complained about Carrone's treatment of Brooks's direct report, Bae; and (2) in March 2022,

when Bright Horizons terminated her, allegedly in retribution for her complaints about her

salary. Neither theory of retaliation is plausibly pled.

> a.    *Failure-to-promote claim*[7]

The first three elements of the *McDonnell Douglas* framework are, with respect to the

failure-to-promote claim, well-pled. Bae had complained to Brooks that Carrone had

marginalized Bae because she "was Asian," AC ¶¶ 82–84, and in reporting that allegation to

Carrone, *id.* ¶ 85, Brooks is fairly pled to have engaged in the protected activity of reporting

unlawful discrimination based on race. The AC, further, supports that Bright Horizons knew of

---

[7] As explained above, *see supra* n.5, the Court considers the failure-to-promote incident only
with respect to the § 1981 claim.

the protected activity. Brooks also suffered a non-promotion, a qualifying adverse employment action. *See Ellerth*, 524 U.S. at 76.

Brooks, however, fails to satisfy the fourth element of the *prima facie* case—a causal connection between her protected activity and the non-promotion. Here, as discussed above, the AC does not plead direct evidence of retaliatory animus. It does not allege that any Bright Horizons official made any statement tying Brooks's failure to secure the promotion to her reporting Bae's complaints to Carrone. And as to indirect evidence, it does not allege that any proper comparator—a co-worker similarly situated to Brooks but-for Brooks's alleged protected activity—was spared these consequences. On the contrary, as noted, the AC fails to allege facts enabling an assessment of the relative qualifications of Brooks and Antonio Lopez, who was promoted over her. *See Henry*, 18 F. Supp. 3d at 408 (dismissing such claims where complaint "failed to describe who the comparators are, what their responsibilities were, how their workplace conduct compared to plaintiff's, or how they were treated" (cleaned up)).

Brooks thus offers no evidence of consequence, beyond potentially temporal proximity between the protected activity and non-promotion, of discriminatory animus with regards to the December 2021 non-promotion. But temporal proximity does not avail Brooks. *See Murray v. City of New York*, No. 23 Civ. 10031, 2024 WL 3553266, at *9 (S.D.N.Y. July 26, 2024) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001))). Temporal proximity is measured based on the time "between an employer's knowledge of protected activity and an adverse employment action." *Murray*, 2024 WL 3553266, at *10 (quoting *Clark Cnty. Sch. Dist. v.*

*Breeden*, 532 U.S. 268, 273 (2001)).  Brooks's reporting allegedly began in April 2021, meaning there was an eight-month gap between Bright Horizons's knowledge of her complaints and Brooks's non-promotion.  Although "[t]here is no firm outer limit to the temporal proximity required, . . . most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference." *Suarez*, 2025 WL 894516, at *15 (citation omitted); *Ragin v. E. Ramapo Cent. Sch. Dist.*, No. 5 Civ. 6496, 2010 WL 1326779, at *24 (S.D.N.Y. Mar. 31, 2010) ("[M]any courts in this circuit have held that periods of two months or more defeat an inference of causation."), *aff'd*, 417 F. App'x 81 (2d Cir. 2011).  Budhan's reporting was too remote in time to support the inference that her non-promotion was motivated by unlawful discrimination.

The Court therefore dismisses this aspect of the retaliation claim.

      *b.    Termination claim*

Brooks's termination-based retaliation claim falls short for failure to plead, as required by the first element of the *prima facie* case, participation in a protected activity.  That is because complaints about pay differentials, without more, do not qualify as a protected activity.  The AC pleads that Brooks complained to Salmon that some of her direct reports—namely, Moran— earned a higher salary than did she.  AC ¶ 105.  But the AC, while factually noting that Moran is white, notably stops short of saying that Brooks, in complaining to Salmon about the pay differential, referenced Moran's race or otherwise used words fairly taken to complain about discrimination based on a protected characteristic. *See id.* ¶ 105 ("Ms. Brooks reported that some of her direct reports—namely Caroline Moran, a white woman—earned a higher salary than her despite being in a more junior position.").  And the balance of the AC's account of the discussion between Brooks and Salmon is silent about race. *See id.* ¶ 107 ("Ms. Brooks reported

to Ms. Salmon that she felt underappreciated and demeaned by Ms. Carrone" and that she "did not understand the boundaries of her job expectations").

A mere complaint about a pay differential (or other job dissatisfactions) does not qualify as protected activity, because pay differentials between employees, unless based on statutorily protected characteristics, do not violate anti-discrimination statutes. *See Robinson v. De Niro*, 739 F. Supp. 3d 33, 78 (S.D.N.Y. 2023) ("The mere fact that Plaintiff complained about a man's salary does not convert her complaint into an allegation of discrimination." (cleaned up)). The AC's elliptical formulation, which adequately pleads a complaint about a pay disparity but does not adequately plead a complaint about a pay disparity based on race or other protected category, falls short of pleading protected activity. *See Brantman v. Fortistar Cap.,* Inc., No. 15 Civ. 4774, 2017 WL 3172864, at *7 (S.D.N.Y. July 22, 2017) ("The plaintiff must complain of discrimination in sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race" (citation omitted)); *Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 308–09 (S.D.N.Y. 2009) ("[T]he onus is on the speaker to clarify to the employer that [s]he is complaining of unfair treatment due to h[er] membership in a protected class.").

Although the failure to plead a protected activity alone defeats her termination-based retaliation claim, the claim also fails because it does not plausibly plead causation. As reviewed above, *see supra*, Section II.B.4.a., Brooks properly pleads only one protected activity: escalating Bae's complaints to Carrone. To the extent Brooks seeks to link that protected activity to her termination based on temporal proximity, that argument fails. Brooks's complaints about that subject began in April 2021, nearly one year before her termination. AC ¶ 85. Given that substantial time gap, the Court cannot find temporal proximity between her

protected activity and her termination well-pled. *Accord Suarez*, 2025 WL 894516, at \*15. The Court thus dismisses that claim.

### C.    State and Local Law Claims

The balance of Brooks's claims arise under state and city law. Dismissal of Brooks's federal claims would ordinarily result in the Court's declining to exercise supplemental jurisdiction over her non-federal claims, where federal-question jurisdiction is the only basis on which the complaint pleads subject-matter jurisdiction. *See, e.g.*, *Budhan*, 2025 WL 919926, at \*8; *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 651–55 (S.D.N.Y. 2017). The AC here, however, loosely alleges that the requirements of diversity jurisdiction are met. AC ¶ 21. The Court therefore examines whether such is so.

Under 28 U.S.C. § 1332(a), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . (1) citizens of different States." Complete diversity requires that "all of the adverse parties in a suit must be completely diverse with regard to citizenship." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998). To determine the citizenship of a limited liability company, the Court must determine the citizenship of each of its members. *See Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012).

Here, the AC does not adequately plead the requirements of diversity jurisdiction. A complaint must affirmatively plead the citizenship of all parties to sustain diversity jurisdiction. *See Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 47 (2d Cir. 1996) ("It is firmly established that diversity of citizenship should be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record."); *ANHAM USA, Inc. v. Afghan Glob. Ins., Ltd.*, No. 23 Civ. 2763, 2024 WL 3362991, at \*6 (S.D.N.Y. July 10,

2024) (statement of jurisdiction must be "express"; it is not sufficient that "jurisdiction may be inferred argumentatively" (citation omitted)).  Here, several defendants are LLCs.  Under settled case law, the AC, to adequately plead diversity, is required to plead the citizenship of each LLC's members. *See, e.g.*, *Budhan*, 2025 WL 919926, at *8; *Prospect Funding Holdings, LLC v. Fennell*, No. 15 Civ. 4176, 2015 WL 4477120, at *2 (S.D.N.Y. July 15, 2015).  The AC instead states that the citizenship of Bright Horizons LLC, Bright Horizons Children's Centers LLC, and Bright Horizons Family Solutions LLC is "unknown."  AC ¶¶ 5, 11.  Brooks thus has failed to carry her burden of alleging diversity citizenship. *See PacifiCorp Capital*, 87 F.3d at 47 (citizenship improperly alleged where complaint described party as a "resident" rather than "citizen" of a state); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."); *Sloan v. Truong*, 573 F. Supp. 2d 823, 828 (S.D.N.Y. 2008) ("[D]iversity jurisdiction does not exist for [plaintiff] has failed to allege, much less prove, complete diversity.").

With no well-pled basis for subject-matter jurisdiction, the Court declines to exercise supplemental jurisdiction.  District courts have supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Although supplemental jurisdiction is discretionary, it is "axiomatic" that a court "should decline to exercise jurisdiction over state-law claims" where, as here, "it dismisses the federal claims prior to trial." *Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial,

even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

The Court thus declines to exercise supplemental jurisdiction over the surviving state and local claims. *See, e.g.*, *Budhan*, 2025 WL 919926, at *8–9 (declining to exercise supplemental jurisdiction over NYSHRL and NYCHRL claims after dismissal of predicate Title VII claim); *Johnson v. St. Barnabas Nursing Home*, 568 F. Supp. 2d 399, 401 (S.D.N.Y. 2008) (same), *aff'd*, 368 F. App'x 246 (2d Cir. 2010); *Matos v. Discovery Commc'ns, LLC*, 750 F. Supp. 3d 307, 327 (S.D.N.Y. 2024) (same).

## CONCLUSION

The Court grants defendants' motion to dismiss in its entirety. Brooks's federal claims are dismissed with prejudice. Brooks's state and local claims, however, having been dismissed solely based on a declination to exercise supplemental jurisdiction, are dismissed without prejudice to Brooks's right to pursue such claims in a new lawsuit.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: June 26, 2025
        New York, New York